UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FULL GOSPEL BAPTIST CHURCH        CIVIL ACTION
FELLOWSHIP INTERNATIONAL

VERSUS                        NO: 12-2749

CAPITAL ONE                 SECTION: "J" (3)

**ORDER AND REASONS**

Before the Court are Defendant Capital One, N.A. ("Capital One")'s **Motion to Dismiss for Failure to State a Claim (Rec. Doc. 3)**, **Motion to Dismiss Plaintiff's Original and Amended Claims (Rec. Doc. 19),** and Plaintiff Full Gospel Baptist Church Fellowship International, Inc. ("Full Gospel")'s oppositions thereto **(Rec. Docs. 11, 21)**. Defendant's Motion to Dismiss for Failure to State a Claim (Rec. Doc. 3) was set for hearing on January 16, 2013, on the briefs. Defendant's Motion to Dismiss Plaintiff's Original and Amended Claims (Rec. Doc. 19) is set for hearing on March 13, 2013, on the briefs. The Court, having considered the motions and memoranda of counsel, the record, and the applicable law, finds that the motions should be **GRANTED in**

1

**part** and **DENIED in part** for the reasons set forth below.

### PROCEDURAL HISTORY AND BACKGROUND FACTS

This diversity action arises from a request for a declaratory judgment on certain contractual provisions as well as a Louisiana state law claim for fraud. On November 13, 2012, Plaintiff filed the instant suit naming Capital One as a Defendant.

In its Complaint, Full Gospel alleges that on February 21, 2003, it entered into an agreement with Capital One to lease a 1982 Beechcraft B-200 aircraft.[1] On October 1, 2004, the parties amended the lease in order to give Capital One the option to sell the aircraft on a commercially reasonable basis at the end of the lease period. The amendment included a Residual Guaranty Clause which provided that, "[Full Gospel] shall pay to [Capital One] the difference between the Casualty Value Loss [sic] and the net proceeds received by [Capital One]" from the sale. Compl., Rec. Doc. 1, pp. 4-5, ¶ 12. The Casualty Loss Value was estimated to be 55.000% of the original purchase price. Full Gospel reports that although the lease expired on October 1, 2011, Capital One "represented to Full Gospel that [Capital One] had a right to

---

[1] Plaintiff originally entered into this lease with Hibernia National Bank, which was subsequently acquired by Capital One.

unilaterally extend the term of the lease until February 21, 2012."[2] Therefore, Full Gospel reports that it continued to pay rental payments for the aircraft for five months after the lease termination date.

On January 26, 2012, Full Gospel reports that the aircraft was inspected and appraised in preparation for sale. Full Gospel asserts that the aircraft was deemed "airworthy" per Federal Aviation Administration standards and given a market value of approximately $756,000. Nevertheless, Full Gospel alleges that in March 2012, Capital One ordered an additional aircraft inspection, which revealed that it would need to pay $134,128.94 to make the plane airworthy. Subsequently, Capital One undertook the repairs and sold the plane for approximately $750,000. Thereafter, Capital One billed Full Gospel for $423,128.94 pursuant to the Residual Guaranty Clause. Specifically, Capital One charged Full Gospel $289,000.00, the difference between the Casualty Loss Value and the net proceeds from the sale of the aircraft, as well as an additional $134,128.94 for the repairs

---

[2] First Am. Compl., Rec. Doc. 10, p. 5, ¶ 17. At the time of the lease formation, the termination date was actually February 21, 2010; however, on October 1, 2004, the parties amended the lease to include a new termination date of October 1, 2011. First Am. Compl., Rec. Doc. 10, p. 4, ¶11. The parties also increased the monthly rental payment from $12,871.74 to $20,065.78 in order to incorporate the cost of two replacement engines that Capital One had added to the plane. First Am. Compl., Rec. Doc. 10, p. 4, ¶11.

that resulted from the second inspection.

Full Gospel asserts that over the course of the lease, it paid monthly rent to Capital One for the use of the plane. Full Gospel further contends that at the close of the lease term, it returned the aircraft to Capital One in airworthy condition without need of repair. Thus, Full Gospel maintains that pursuant to the lease agreement, it is not responsible for the $423,128.94 worth of costs billed. Accordingly, in Full Gospel's original Complaint, it sought a declaratory judgment from this Court interpreting the lease agreement and determining the parties' obligations therein. Full Gospel also sought a determination of whether Capital One had committed contractual fraud and owed Plaintiff general and consequential damages and attorneys' fees.

On December 21, 2012, Capital One filed its first motion to dismiss, arguing that Full Gospel's first Complaint should be dismissed because it failed to state a claim upon which relief could be granted. Capital One asserted that Full Gospel had failed state claims for breach of contract and contractual fraud, and that Full Gospel's claims for consequential damages and attorneys' fees were not cognizable. In response, on January 11, 2013, Full Gospel filed a First Amended Complaint, removing its claims for consequential damages and attorneys' fees and seeking

only a declaratory judgment from the Court on its contract claims and actual damages on its fraud claim.[3] Likewise, on the same date, Full Gospel filed its opposition to the motion to dismiss, claiming that in light of the amended complaint, Capital One's motion was moot. Rather than file a reply to Full Gospel's opposition, Capital One filed a second motion to dismiss on February 15, 2013, incorporating its previous motion "in extenso" and reasserting its arguments that Full Gospel had failed to state a claim.

In its second motion, Capital One specifically argues that Full Gospel has failed to state a claim in its First Amended Complaint. On March 6, 2013, Full Gospel filed its opposition to Capital One's second motion to dismiss. Full Gospel further supplemented its filing on March 7, 2013 by filing an additional opposition memorandum. Because Capital One incorporates the first motion to dismiss in its later filed motion, the Court considers them together in the instant Order. Furthermore, because Full Gospel voluntarily withdrew its claims for consequential damages and attorneys' fees in its First Amended Complaint, the Court addresses only Capital One's arguments with respect to Full

---

[3] Full Gospel also changed its fraud claim from a "contractual fraud claim" to a general claim of fraud. See First. Am. Compl., Rec. Doc. 10, p. 10.

5

Gospel's contract and fraud claims. Likewise, because Full Gospel's First Amended Complaint completely superceded its initial Complaint, the Court only looks to Full Gospel's First Amended Complaint when determining whether or not Full Gospel has stated a claim.

## THE PARTIES' ARGUMENTS

Capital One contends that Full Gospel's fraud claims are facially deficient. Specifically, it argues that Full Gospel has not alleged any particularized facts which support an allegation of some misrepresentation by Capital One. Rather, Capital One asserts that Full Gospel's claims are merely specious because the terms of the contract were clear and express, and there is no alleged misrepresentation by Capital One. In addition, Capital One asserts that Full Gospel has failed to allege that Capital One acted with any intent to deceive, a requirement of fraud. Instead, Capital One asserts that the allegations surrounding the "misrepresentation" at issue in this case merely demonstrate that Capital One acted to assert a contractual right that Full Gospel disputes. Thus, Capital One contends Plaintiff has failed to allege an actionable fraud claim. Furthermore, Capital One argues that to the extent a misrepresentation has been alleged, it is not actionable unless the party bringing the allegations has

relied on it to its detriment. Accordingly, Capital One argues that because Full Gospel has not incurred any damages, since it has not paid any of the $423,128.94 allegedly owed to Capital One, it has not experienced any actual loss and, therefore, by definition has no legally actionable fraud claim.

Similarly, in Capital One's first motion to dismiss, it argues that Full Gospel has not stated an actionable breach of contract claim because, up to this point, there has been no breach. Specifically, Capital One notes that Full Gospel has not alleged that Capital One has withheld performance of its obligations under the lease; instead, it asserts that Full Gospel has simply alleged that Capital One has requested more money than Full Gospel believes it should pay. Capital One asserts that this should actually be a defense to a breach of contract claim brought by itself against Full Gospel, rather than a breach of contract claim made in the suit's current posture. Capital One also notes that Full Gospel has not incurred any damages because it has not paid any money yet. Therefore, Capital One contends that Full Gospel cannot fulfill the last element of a breach of contract claim — damages.[4]

---

[4] In Capital One's second motion to dismiss, it asserts that Full Gospel's amended complaint appears to have abandoned its breach of contract claims. However, Capital One also asserts that out of an abundance of caution it still incorporates all of its arguments from its original motion. Because this Court

In response, Full Gospel asserts that its First Amended Complaint demonstrates that it has set forth all of the facts necessary to support claims for fraud and to make Capital One aware of the contractual claims for which is seeks a declaratory judgment.  Furthermore, it contends that its First Amended Complaint clearly sets out its fraud claim with particularity.  Full Gospel argues that Capital One's motion to dismiss attempts to mischaracterize the facts of the case in order to make it appear  like Full Gospel does not have a fraud claim. However, Full Gospel contends that the facts it actually alleges do set out a plausible claim for fraud, and that its complaint should not be dismissed. Additionally, Full Gospel asserts that because of the disparity in the sophistication of the parties, Full Gospel could not have ascertained and/or discovered Capital One's intent to expand and distort the contract terms until after the termination of the lease term.

## DISCUSSION

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).  The

_____

does not note any substantive difference between the contractual claims asserted in Full Gospel's original Complaint and First Amended Complaint, it will address Capital One's arguments as if they were directed at the First Amended Complaint.

complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 346 (2005). The allegations "must be simple, concise, and direct." FED. R. CIV. P. 8(d)(1).

Notwithstanding Rule 8's liberal pleading requirements, when a party pleads claims of fraud, such claims must be pleaded with particularity. FED. R. CIV. P. 9(b). The claimant must assert more than mere conclusory allegations or technical elements. Id. The claim must contain "particularized allegations of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation." Castillo v. First City Bancorp. of Texas, Inc., 43 F.3d 953, 961 (5th Cir. 1994) (citing Tel-Phonic Servs., Inc. v. TBS Int'l, Inc., 975 F.2d 1134, 1139 (5th Cir. 1992)). However, Rule 9(b)'s particularity requirement should not abrogate the requirements of Rule 8 and both rules should be read in conjunction with one another. Burford v. Cargill, Inc., No. 05-0283, 2011 WL 432124, at *12 (W.D. La. Sept. 20, 2011) (citing In re Catfish Antitrust Litig., 826 F. Supp. 1019, 1029 (N.D. Miss. June 28, 1993)); 5A CHARLES ALAN WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE AND PROCEDURE § 1298 (3d ed.).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff

must plead enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. Lormand v. U.S. Unwired, Inc., 565 F.3d 228, 232-33 (5th Cir. 2009); Baker v. Putnal, 75 F.3d 190, 196 (5th Cir. 1996). The court is not, however, bound to accept as true legal conclusions couched as factual allegations. Iqbal, 556 U.S. at 678.

First, the Court evaluates Full Gospel's contract claims. Full Gospel's complaint states that it seeks a declaratory judgment as to the termination date of the lease, the monthly payments owed from October 1, 2011 through February 21, 2012, the costs of repairs owed to Capital One, the purchase price that should be used when exercising the Residual Guarantee Clause of the lease, and the original purpose of the October 1, 2004 lease amendment. Under both Louisiana law and federal law, parties who have an actual and justiciable controversy are allowed to seek declaratory relief from the courts. Uniform Declaratory Judgment

10

Act of 1922 § 1, 28 U.S.C. § 2201 (2012); La. Code Civ. Proc. art. 1871 (2012). A party may seek a declaratory judgment on a contractual theory, such as breach of contract, both before and after the breach. Uniform Declaratory Judgment Act of 1922 § 3; La. Code of Civ. Proc. art. 1873. In particular, under Louisiana law, declaratory judgments have been specifically contemplated for use in the context of contractual disputes and interpretation. La. Code of Civ. Proc. art 1873 ("Construction of Contract"); see also W.H. Beach, Annotation, Application of Declaratory Judgment Acts to Questions in Respect of Contracts or Alleged Contracts, 162 A.L.R. 756 (2012) ("[D]eclaratory judgments may be rendered with respect to many questions arising in connection with contracts, such as questions as to formation, validity, construction and effect, performance or breach, and termination."). Thus, contrary to Capital One's arguments, there is no requirement that the contractual breach have occurred, or that Full Gospel have incurred damages in order for Full Gospel to request a declaratory judgment on the contract.

Here, Full Gospel seeks to have this Court construe the contract between itself and Capital One. Full Gospel's allegations in the First Amended Complaint indicate that there is an actual controversy between Full Gospel and Capital One, and

11

that such a judgment would not be merely advisory.[5] Moreover, such relief is contemplated under both federal and state law. As such, the Court finds that Full Gospel has effectively stated a cause of action for its contract claims.

With respect to Full Gospel's fraud allegations, the Court finds that Full Gospel has failed to state a claim. The Louisiana Supreme Court discussed fraud in relation to a contract in Shelton v. Standard/700 Associates, No. 01-0587 (La. 10/16/01); 798 So. 2d 60. There, the court explained that,

> A contract is formed by the consent of the parties. LSA-C.C. art. 1927. However, consent may be vitiated by error, fraud, or duress. LSA-C.C. art. 1948. "Fraud is

---

[5] The United States Supreme Court has stated that,

> [a] justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot . . . . The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. . . . It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts . . . . Where there is such a concrete case of an immediate and definitive determination of the legal rights of the parties in an adversary proceeding upon the facts alleged, the judicial function may be appropriately exercised although the adjudication of the rights of the litigants may not require the award of process or the payment of damages.

Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240-41 (1937) (citations omitted).

a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction." LSA-C.C. art. 1953. " **5 Error induced by fraud need not concern the cause of the obligation to vitiate consent, but it must concern a circumstance that has substantially influenced that consent." LSA-C.C. art. 1955.

Nevertheless, fraud does not vitiate consent when the party against whom the fraud was directed could have ascertained the truth without difficulty, inconvenience, or special skill. However, this exception does not apply when a relation of confidence has reasonably induced a party to rely on the other's assertions or representations. LSA-C.C. art. 1954. . . .

In sum, there are three basic elements to an action for fraud against a party to a contract: (1) a misrepresentation, suppression, or omission of true information; (2) the intent to obtain an unjust

advantage or to cause damage or inconvenience to another; and (3) the error induced by a fraudulent act must relate to a circumstance substantially influencing the victim's consent to (a cause of) the contract.

Id. at 64.

In the instant case, Full Gospel asserts that Capital One misrepresented the termination date of the lease agreement and Full Gospel's obligations thereunder, causing Full Gospel to have to pay rental payments that it did not owe (totaling approximately $88,000).[6] To the extent that such allegations might be sufficient to state a fraud claim, the Court notes that "when the party against whom the fraud was directed could have ascertained the truth without difficulty, inconvenience, or special skill," fraud does not vitiate consent and, therefore, a plaintiff has no action for fraud. Shelton, 798 So. 2d at 64. Despite Full Gospel's intimations to the contrary, in the instant case, Full Gospel could easily have referred to the contract terms to determine the termination date of the contract as well

_____

[6] First Am. Compl., Rec. Doc. 10, pp. 5, 10, ¶¶ 17, 36 – 37 ("Though the lease, according to its terms, expired on October 1, 2011, Defendant Capital One represented to Full Gospel that it had a right to unilaterally extend the term of the lease . . .").

14

as to determine whether Capital One had an option to extend the termination date.[7] Thus, while Full Gospel may have laid out some of the mechanical elements of fraud, it has failed to allege a plausible fraud claim under Louisiana law.[8]

Furthermore, Rule 9 requires that Full Gospel plead fraud with particularity making "allegations of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation." Castillo, 43 F.3d at 961. The First Amended Complaint does not provide the Court with any description of when and where Capital One made the alleged misrepresentation. It also fails to provide any description of who made the representation, other than to generally refer to the "bank." Thus, the Court finds that Full Gospel has failed meet the requirements of Rule 9 and, therefore, has failed to sufficiently state a claim for fraud.[9] Accordingly,

---

[7] The Court notes that Full Gospel's First Amended Complaint plainly references October 1, 2011 as the lease termination date that was included in the first amendment to the lease. First Am. Compl., Rec. Doc. 10, p. 4, ¶ 11.

[8] To the extent that Full Gospel might argue that it remedied its fraud claims by using the more general term "fraud" in its First Amended Complaint, instead of the more specific term "contractual fraud," which  it used in the original Complaint, the Court notes that changing the name of the claim does not change the substance of the claim. Substantively, Full Gospel's claim is one for fraud in relation to a contract, i.e. contractual fraud.

[9] The Court notes that while Full Gospel does not have a claim for contractual fraud, to the extent that its allegations actually allege a contractual dispute about the termination date of the lease and Full Gospel's obligations under the lease, that controversy can be fully resolved through Full Gospel's declaratory judgment action.

15

**IT IS ORDERED** that Defendant's motions are **GRANTED in part** and **DENIED in part**.

To the extent that Defendant's motions request that Plaintiff's fraud claims be dismissed, the motions are **GRANTED**. Plaintiff's claims for fraud are hereby **DISMISSED with prejudice**.

To the extent that Defendant's motions request that Plaintiff's contractual claims be dismissed, the motions are **DENIED**.

New Orleans, Louisiana this 11th day of March, 2012.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE