UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


FULL GOSPEL BAPTIST CHURCH                 CIVIL ACTION
FELLOWSHIP INTERNATIONAL

VERSUS                                     NO: 12-2749

CAPITAL ONE                                SECTION: "J" (3)


**ORDER AND REASONS**

Before the Court is Defendant Capital One, N.A. ("Capital One")'s **Motion for Partial Summary Judgment (Rec. Doc. 37)** and Plaintiff Full Gospel Baptist Church Fellowship International ("Full Gospel")'s opposition thereto (Rec. Doc. 45). Defendant's motion was set for hearing on October 9, 2013, on the briefs. A pretrial conference is scheduled for October 17, 2013, and a bench trial is scheduled for November 18, 2013. The Court, having considered the motions and memoranda of counsel, the record, and the applicable law, finds that Defendant's motion should be **GRANTED** for the reasons set forth more fully below.

1

<u>**PROCEDURAL HISTORY AND BACKGROUND FACTS**</u>

This diversity action arises from Full Gospel's request for a declaratory judgment on certain contractual provisions. On February 21, 2003, Full Gospel and Capital One's predecessor-in-interest by merger, Hibernia National Bank ("Hibernia"), entered into an Aircraft Lease Agreement ("the Original Lease") for the purpose of financing Full Gospel's purchase of a Beechcraft King Air twin-turboprop aircraft. Under the terms of the Original Lease, Full Gospel was responsible for all maintenance and repairs during the term of the lease; however, when both engines were in need of replacement, Full Gospel was not financially capable of replacing the engines, and it returned to Hibernia to finance the engines in September 2004. As a result, the parties entered into a "First Amendment to Aircraft Lease and Release of Lease With Respect to Replaced Engines" ("Amendment") that took effect on October 1, 2004.

The purpose of the Amendment is laid out in the second paragraph of the lease:

> Lessor at Lessee's request has installed replacement engines on the Aircraft and performed certain other work thereon. In consideration of Lessor's performance of such work, Lessee and Lessor wish to amend the Lease to reflect an extension of the term, an increase in the monthly rental, the information for the replacement engines, and certain other matters as hereinafter

2

provided.

(Amendment, Exh. 1(a) to Pl.'s Complaint, Rec. Doc. 1-3 p. 1)
Among the "certain other matters" is a Residual Guaranty which
provides that:

> If Lessee opts to return the Aircraft to Lessor
> following the termination of the Lease Term, Lessor at
> its option may undertake to sell the Aircraft within a
> six month period following the end of the Lease Term.
> Any such sale shall be on a commercially reasonable
> basis. Lessee agrees that in the event that the net
> proceeds of such sale (gross proceeds less taxes and
> sale related expenses incurred or paid by Lessor) is
> less than the Casualty Loss Value as of the final date
> of the Lease Term, Lessee shall pay to Lessor the
> difference between the Casualty Loss Value and the net
> proceeds received by Lessor, up to a maximum amount not
> to exceed 17% of the Lessor's Original Purchase Price.

(Amendment, Exh. 1a to Pl.'s Complaint, p. 1) Further, the
"Original Purchase Price," which was stipulated as $1,290,000 in
the Original Lease Agreement, was amended to $1,700,000 in the
Amendment to reflect the inclusion of the new engines.

When the term of the lease expired, Full Gospel opted to
return the aircraft, and shortly thereafter, Capital One sold the
aircraft for $750,000. (Purchase Ag., Exh. A-3 to Def.'s Mtn,
Rec. Doc. 37-2, p. 48) On August 23, 2012, after the sale of the
aircraft, Capital One made demand upon Full Gospel for
$423,128.94, which sum it claims it is owed under the Residual
Guaranty Clause and for other charges authorized under the lease.

3

(Demand Letter, Exh. 3 to Complaint, Rec. Doc. 1, p. 2) The amount demanded under the Residual Guaranty, though listed as $289,000 in the Demand Letter, was later adjusted to $185,000.

Full Gospel filed a complaint seeking declaratory relief as to certain contractual provisions, along with other claims that were subsequently dismissed.[1] Capital One filed a counterclaim on April 29, 2013, seeking payment of all sums owed to it by Full Gospel. Though the parties dispute several sums alleged to be owed, in the instant motion for partial summary judgment, Capital One only seeks a judgment to enforce its entitlement to collect the $185,000 under the Residual Guaranty and an award of attorneys' fees and costs pursuant to Section 11(c) of the Lease.

## LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56(c)); Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994).  When assessing whether a dispute as to any

_____

[1] Plaintiff also asserted a fraud claim that was dismissed by the Court in its Order and Reasons dated March 11, 2013. (Rec. Doc. 23)

material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co., 530 F.3d 395, 398 (5th Cir. 2008).  All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. Little, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." Delta, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" Int'l Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257, 1263-64 (5th Cir. 1991) (citation omitted).  The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." Id. at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may

satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim.  See Celotex, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists.  See id. at 324.  The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial.  See, e.g., id. at 325; Little, 37 F.3d at 1075.

## DISCUSSION

### A. Residual Guaranty Clause

Capital One contends that it is entitled to judgment as a matter of law on this issue because the Amendment clearly and unambiguously sets forth the Residual Guaranty Clause, and because it was clear under the Amendment that the Original Purchase Price changed from $1,290,000 to $1,700,000, which would affect the calculations made under the Residual Guaranty. Full Gospel, on the other hand, argues that Capital One misinterprets the contract and construes the Amendment too broadly. Based on a review of the agreements at issue, the Court finds that Capital One's arguments prevail.

"Interpretation of a contract is the determination of the

6

common intent of the parties." La. Civ. Code. Art. 2045. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ. Code. Art. 2046. "A contract is considered ambiguous on the issue of intent when either it lacks a provision bearing on that issue, the terms of a written contract are susceptible to more than one interpretation, there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed." Campbell v. Melton, 2001-2578 (La. 5/14/02), 817 So. 2d 69, 75. "Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." La. Civ. Code Art. 2050. Contract interpretation is a question of law that may be resolved on summary judgement. Brown v. Drillers, Inc., 93-cc-1019, (La. 1/14/94), 630 So. 2d 741, 750.

The Residual Guaranty Clause clearly indicates that, in the event that Full Gospel returned the aircraft to Capital One at the end of the term, Capital One would have the option of selling the aircraft within six months of the end of the term. Should Capital One exercise this option, the Residual Guaranty Clause plainly states that Full Gospel would be liable for the lesser of

(a) 17% of the Original Purchase Price, or (b) the difference between the net proceeds from the sale of the aircraft and the Casualty Loss Value as of the final date of the Lease term.

The table used for determining the Casualty Loss Value is included in Annex A of both the Amendment and the Original Lease.[2] In both the Original and Amended Annex A, the Casualty Loss Value is calculated by looking to the "% of Original Purchase Price." Nowhere in either Annex is a value assigned to the Original Purchase Price, thus logically, the parties would have to look elsewhere in the contract to find the stipulated Original Purchase Price.  This value is only listed in one place in the entire agreement (Annex B), thus the value must be taken from Annex B.  If the parties had intended to use separate values in Annex A and Annex B, they would not have used the same term in both sections, and then only defined that term in one location. Therefore, the amended Original Purchase Price must be used in calculating the amount owed under the Residual Guaranty Clause, making Capital One's demand for $185,000 a proper demand.[3]  As

---

[2] The only difference between the two Annexes is the parenthetical next to "Month 1." In Annex One to the Original Lease Agreement, the parenthetical indicates that "Month 1" begins on the delivery date, but in Annex One to the Amendment, "Month 1" begins on the Amendment date.

[3] Under the Residual Guaranty Clause, Full Gospel is liable for the lesser of (a) 17% of the Original Purchase Price, or (b) the difference between the net proceeds from the sale of the aircraft and the Casualty Loss

such, summary judgment must be granted in favor of Capital One on this issue.

Full Gospel's arguments in its opposition do not persuade the Court that summary judgment is inappropriate. Full Gospel urges the Court to apply the Original Purchase Price stipulated to in the Original Lease. Using this amount to calculate the Casualty Loss Value, the $750,000 sale price is actually more than the Casualty Loss Value, thus Full Gospel would owe nothing under the Residual Guaranty Clause. Full Gospel contends that it is proper to apply the Original Purchase Price to which the parties stipulated in the Original Lease because the Amendment only altered the Original Purchase Price in Annex B, thus the amended Original Purchase Price only applies to the calculation of monthly lease payments. In support of this conclusion, Full Gospel advances four arguments, all of which the Court rejects.

---

Value as of the final date of the Lease term.
    The calculation of value (a) is as follows:

        17% of the $1,700,000.00 (the amended Original Purchase Price) = $289,000.00

    The calculation of value (b) is as follows:

        (Original Purchase Price * Casualty Loss Percentage from Annex A) - Sale Price = value (b)
        (1,700,000.00 * 55%) - 750,000.00 = 185,000.00

    Because the value (b) is the lesser of the two, Full Gospel owes the difference between the sale price and the Casualty Loss Value, which is $185,000.

First, Full Gospel argues that the Amendment clearly illustrates the parties' intent to amend only the length of the lease term, the amount of the monthly rental payments, and information about the replacement engines, as evidenced by the clause expressing the parties desires "to amend the Lease to reflect an extension of the term, an increase in the monthly rental, the information for the replacement engines, **and certain other matters as hereinafter provided**." (Amendment, Exh. 1a to Pl.'s Complaint, p. 1) (emphasis added). This argument is without merit because the provision is not confined to the three changes on which Full Gospel relied, but rather includes the language "and certain other matters as hereinafter provided."  The Residual Guaranty Clause is one of those "other matters" under this clause in the Amendment.[4] Thus, on the face of the contract, it is clear that the parties intended to amend the Original Lease Agreement to include the Residual Guaranty Clause.

Second, Full Gospel argues that the Amendment clearly states that all Schedules and Annexes to the Original Lease remain in full force. Thus, Full Gospel avers that the only Schedules and

---

[4] The Court further notes that the Residual Guaranty is clearly listed just three paragraphs after this statement.  Moreover, the Amendment is rather short-less than two pages-thus foreclosing the possibility that this clause was hidden amongst a litany of new provisions.

10

Annexes that were affected were those relating to the length of the lease term, the amount of the monthly rental payments, and information about the replacement engines. This argument fails for the same reason that the prior argument fails. Specifically, Full Gospel ignores the "other matters" language discussed above.

Third, Full Gospel contends that the Residual Guaranty does not indicate that the Original Purchase Price set forth in the Guaranty or in Annex A (the schedule of Casualty Loss Provisions) should be revised, nor do either of these sections cross-reference the Original Purchase Price set forth in Annex B. While it is true that no specific reference is made to indicate that the Original Purchase Price listed in Annex B applies to all instances where the term is used in the contract, it is the only explanation available. Original Purchase Price is not defined anywhere else in the agreements. Further, it is telling that Full Gospel asks the Court to borrow the Original Purchase Price in Annex B to the Original Agreement to calculate the Casualty Loss Value to be used in the Residual Guaranty Clause; but, at the same time, Full Gospel argues that such cross-referencing must be explicitly permitted by the language of the contract. Such an argument only supports the conclusion that the agreements clearly intended for the Original Purchase Price to be adopted in all

clauses of the agreements.

Finally, Full Gospel asserts that Section 9 of the Original Lease, read together with the Amendment, evidences the parties' intent to preclude Capital One from receiving a "windfall of profits" as it is attempting to do in the instant lawsuit. Section 9 states that:

> In the event that the Lessee shall fail duly and promptly to perform any of its obligations under the provisions of this Lease, Lessor may, at its option, perform the same for the account of Lessee without thereby waiving such default, and any amount paid or expense (including reasonable out of pocket outside attorney's fees), penalty or other liability incurred by Lessor in such performance, together with interest at the Prime Rate [...] plus three percent per annum [...] from the date of the demand on the Lessee to make such payment until paid by Lessee to Lessor, shall be payable by Lessee upon demand as additional rent for the Aircraft.

(Original Lease § 9, Exh. 1 to Complaint, Rec. Doc. 1-2, p. 8)

The crux of all of Full Gospel's arguments, including its argument under Section 9, is that Capital One is somehow charging it twice for the engines-once by increasing rent payments for an increased term and again by demanding payment under the Residual Guaranty Clause. This does not appear to be the case, however. Full Gospel was responsible for making repairs, such as replacing engines. When such a repair became necessary, Full Gospel could not afford to purchase the engines

12

and chose to finance this purchase through Hibernia and the Amendment. Thus, the addition of the Residual Guaranty Clause and increased payments appears to be a financing arrangement separate from the lease of the aircraft.  Section Nine does not apply in this situation because Full Gospel did not fail to perform its obligation under the Lease, and Capital One was not required to make a demand upon Full Gospel to repair the engines. Quite the contrary, Full Gospel took affirmative steps to satisfy this duty, and did so by seeking to finance the engines through the Amendment. Thus, no windfall was received as Full Gospel contends is the case.

In addition to Full Gospel's above-listed arguments, it also contends that, because it is the party with less bargaining power, any ambiguity in the contracts at issue must be construed against the drafter, Capital One, pursuant to La. Civ. Code. Art. 2056; and that any doubt in the contract should have been explained to Full Gospel pursuant to La. Civ. Code. Art. 2057. These codal provisions apply when doubt cannot otherwise be resolved; so, as the Court determined that the provisions at issue are clear, these articles need not be invoked.

**B. Attorney's Fees and Costs pursuant to Section 11(c) of the Lease**

Section 11(c) of the Original Lease provides that, "[s]hould any proceeding be instituted by or against Lessor for monies due to Lessor hereunder and/or for possession of the Aircraft or for any other relief, Lessee shall pay reasonable out of pocket attorneys' fees and expenses of Lessor's outside counsel." (Original Lease § 11(c), Exh. 1 to Complaint, Rec. Doc. 1-2, p. 11). Finding that this instant matter squarely fits within the confines of this provision, the Court finds that Capital One is entitled to reasonable attorneys' fees relating to this litigation.

Accordingly,

Defendant Capital One, N.A.'s **Motion for Partial Summary Judgment (Rec. Doc. 37)** is **GRANTED**.

**IT IS ORDERED** that judgment will be entered in favor of Counterclaim plaintiff Capital One, N.A., and against Counterclaim defendant Full Gospel Baptist Church International Fellowship, in the amount of $185,000 pursuant to the Residual Guaranty Clause.

**IT IS FURTHER ORDERED** that Capital One's rights to demand other sums described in its Counterclaim **(Rec. Doc. 30)** are not

prejudiced by this action.

**IT IS FURTHER ORDERED** that, within 14 days of this order, Capital One shall submit to the Court an adequately supported motion for attorney's fees pursuant to Federal Rule of Civil Procedure 54(d)(2).

New Orleans, Louisiana this 9th day of October, 2013.


CARL J. BARBIER
UNITED STATES DISTRICT COURT

15